IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ANNE NICOLE SHARP,<br>*on behalf of* ROBERT LEE PENSE,<br><br>  Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>*Acting Commissioner of Social Security*,<br><br>  Defendant. | §<br>§<br>§<br>§<br>§   Civil Action No. 4:21-cv-231-ALM-KPJ<br>§<br>§<br>§<br>§<br>§<br>§ |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Anne Nicole Sharp on behalf of her deceased father, Robert Lee Pense ("Mr. Pense"), brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying Mr. Pense's claim for disability insurance benefits. Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

### I.   APPLICABLE LAW

**A.   Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

B.  **Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.      BACKGROUND AND PROCEDURAL HISTORY

Mr. Pense was born in 1970, completed high school, and worked as a stocker for Wal-Mart until October 2016.[4] *See* Tr. 30, 101, 302–05, 323–24, 392–93. On March 20, 2017, Mr. Pense filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). *See* Tr. 99, 101, 114, 286–301. In both applications, Mr. Pense alleged disability since October 28, 2016, due to "chronic pain [in his] back, legs, and neck; anxiety; serotonin deficiency; and short term/long term memory loss." *See* Tr. 99, 101–02, 114–15. The Social Security Administration ("SSA") denied Mr. Pense's claims initially on July 18, 2017, and upon reconsideration on March 23, 2018. *See* Tr. 161–74, 180–84. Thereafter, Mr. Pense filed a written request for a hearing. *See* Tr. 187–88. On August 14, 2019, Administrative Law Judge Elizabeth B. Dunlap (the "ALJ") held a hearing. *See* Tr. 47–98. The hearing was attended by Mr. Pense, his attorney, and a vocational expert (the "VE"). *See* Tr. 47.

On February 25, 2020, the ALJ issued an unfavorable decision denying Mr. Pense's claims. *See* Tr. 18–31. In her decision, the ALJ found that Mr. Pense met the insured status requirements of the Social Security Act (the "Act") through December 31, 2021. *See* Tr. 18. At step one, the ALJ found that Mr. Pense had not engaged in substantial gainful activity since October 28, 2016, his alleged onset date. *Id*. At step two, the ALJ found that Mr. Pense had the following severe impairments: remote history of non-Hodgkin's lymphoma; hypothyroidism; hypertension; syncopal episode; adjustment disorder with mixed anxiety and depressed mood; and posttraumatic stress disorder ("PTSD"). *Id*. At step three, the ALJ found that none of Mr. Pense's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 24. Because the ALJ found

---

[4] Documents 9-1 through 9-20 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

that none of the impairments met a Listing, the ALJ assessed Mr. Pense's RFC. *See* Tr. 24–30. The ALJ found Mr. Pense had the RFC to:

> perform sedentary work as defined by 20 CFR 404.1567 and 416.967, except he cannot climb ladders. Mentally, he can understand, remember, and carry out simple, one- or two-step instructions and deal with no or only occasional variables in or from standardized situations. He occasionally can work in cooperation/coordination with coworkers and interact with supervisor[s] and the public.

*See* Tr. 24–25. The ALJ then used the SSA's expedited process and made no findings at step four regarding Mr. Pense's ability to perform past relevant work.[5] *See* Tr. 30. Instead, the ALJ proceeded directly to step five, where she determined that considering Mr. Pense's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy he could perform. *See* Tr. 30–31. Relying on the VE's testimony, the ALJ determined that Mr. Pense could perform occupations such as final assembler and sorter. *See* Tr. 30. Accordingly, the ALJ concluded Mr. Pense was not disabled within the meaning of the Social Security Act (the "Act"). *See* Tr. 31.

Mr. Pense requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 283–85, 418–22. On January 26, 2021, the Appeals Council denied the request for review. *See* Tr. 1–3. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g).

---

[5] The expedited process is as follows:
> If we do not find you disabled at the third step, and we do not have sufficient evidence about your past relevant work to make a finding at the fourth step, we may proceed to the fifth step of the sequential evaluation process. If we find that you can adjust to other work based solely on your age, education, and the same residual functional capacity assessment we made under paragraph (e) of this section, we will find that you are not disabled and will not make a finding about whether you can do your past relevant work at the fourth step. If we find that you may be unable to adjust to other work or if § 404.1562 may apply, we will assess your claim at the fourth step and make a finding about whether you can perform your past relevant work.

*See* 20 C.F.R. §§ 404.1520(h), 416.920(h).

Mr. Pense timely filed his appeal to this Court on March 23, 2021, seeking review of the denial of his DIB and SSI claims.[6] *See* Dkt. 1. On September 28, 2021, counsel for Mr. Pense notified the Court that Mr. Pense passed away on April 11, 2021. *See* Dkt. 12. That same day, Anne Nicole Sharp, Mr. Pense's daughter, filed a motion to substitute for her deceased father on the basis that she "has a claim to any owed [d]isability [i]nsurance [b]enefits payments under 20 C.F.R. § 404.503(b)." *See* Dkt. 12 as 1. Under 20 C.F.R. § 404.503(b)(2), a deceased claimant's child is a successor in interest to benefits payable to the claimant in a Title II claim for DIB. The same is not true for a claim for SSI under Title XVI, which provides for only a surviving spouse to serve as a successor in interest. *See* 20 C.F.R. § 416.542(b). The Court has already substituted Ms. Sharp as Plaintiff with respect to Mr. Pense's DIB claim.[7] *See* Dkt. 14. As for Mr. Pense's SSI claim, no successor in interest has been identified, and to date, no motion to substitute has been filed for that claim. Accordingly, the Court recommends dismissing Mr. Pense's SSI claim due to his death and there being no substitute successor in interest for that claim. The Court's analysis, below, focuses solely on Mr. Pense's DIB claim.

### III.   ANALYSIS

On appeal, Mr. Pense argues that the ALJ failed to properly assess the opinions of Mr. Pense's treating primary care physician, Dr. J.E. Froelich, D.O. *See* Dkt. 18 at 10–16. Mr. Pense contends the errors resulted in an RFC assessment that is not supported by substantial evidence. *Id.* In response, the Commissioner asserts the ALJ properly evaluated Dr. Froelich's opinions in accordance with the relevant legal standards, and further, that substantial evidence supports the

---

[6] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 2.

[7] For ease of reference, the Court will use "Mr. Pense" or "Mr. Pense's DIB claim" throughout this Report and Recommendation.

RFC assessment. *See* Dkt. 19 at 4–9. The Court finds that remand is necessary because the ALJ failed to apply the proper legal standards in her evaluation of Dr. Froelich's assessment of Mr. Pense's mental capacity.

### A. Treating Physician Rule

With respect to disability claims filed before March 27, 2017,[8] such as Mr. Pense's claim, a treating physician's opinion on the nature and severity of a claimant's impairment should be accorded "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *See* 20 C.F.R. § 404.1527(c)(2); *Brown v. Astrue*, 344 F. App'x 16, 20–21 (5th Cir. 2009). However, as the Fifth Circuit explained in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), a treating physician's opinion may be assigned less weight, little weight, or even no weight if good cause is shown. *Newton*, 209 F.3d at 455. Good cause to assign less than controlling weight to a treating physician's opinion exists where the opinion is "conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

If the ALJ does not assign a treating source's opinion controlling weight, the ALJ must assess the appropriate weight to assign the opinion based on the factors provided in 20 C.F.R. § 404.1527(c). These factors are: (1) the physician's examining relationship; (2) the nature and extent of the treatment relationship, i.e., the length of treatment and frequency of examination; (3) the support a medical source presents for its opinion, in terms of objective evidence and explanation; (4) the consistency of the opinion with the record as a whole; (5) the specialization of

---

[8] The SSA has published a new rule that applies to claims filed on or after March 27, 2017, which eliminates the requirement that treating sources be given controlling weight. *See* 20 C.F.R. § 404.1520c. However, Mr. Pense filed his claim before March 27, 2017 and, therefore, the treating physician rule applies.

the physician; and (6) other factors, including a medical source's amount of understanding of SSA "disability programs and their evidentiary requirements." *See* 20 C.F.R. § 404.1527(c).

*Newton* explains further that an ALJ need not consider the § 404.1527(c) factors where there is "competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" or when "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Newton*, 209 F.3d at 458 (citations omitted). In other words, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [404.1527(c)(2) ]."[9] *Newton*, 209 F.3d at 453.

### B. The ALJ's Evaluation of Dr. Froelich's Mental Capacity Assessment

Dr. Froelich was a provider in the Family Practice – General Medicine group at the Family Care Clinic in Bonham, Texas. *See* Tr. 547–65. Mr. Pense's treatment records show that he began seeing Dr. Froelich in January 2015. *See* Tr. 551. During the time period relevant to Mr. Pense's DIB claim, he saw Dr. Froelich approximately four times. *See* Tr. 560 (Nov. 1, 2016); Tr. 559 (Dec. 29, 2016); Tr. 558 (Apr. 13, 2017); Tr. 557 (Apr. 24, 2017). Some of these primary care visits were to follow-up on Mr. Pense's hospitalization for pneumonia, while others involved Mr. Pense receiving osteopathic manipulative treatment ("OMT") for various physical impairments. *See id.* During some of these visits, Dr. Froelich noted that Mr. Pense complained of anxiety and

---

[9] The original text in *Newton* refers to the criteria set forth in 20 C.F.R. § 404.1527(d)(2), but this section was renumbered without substantive change to 20 C.F.R. § 404.1527(c)(2). *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (effective Aug. 24, 2012 to Mar. 26, 2017); *see also Newton*, 209 F.3d at 448.

8

sleep disturbances. *See, e.g.*, Tr. 559 (Dec. 29, 2016 visit wherein Mr. Pense reported "severe anxiety and sleep disturbance," feeling "fearful, angry, reclusive," and finding it "hard to hold temper").

On October 18, 2018, Dr. Froelich completed Physical and Mental Capacity Assessment Forms for Mr. Pense (hereinafter, the "Physical Assessment" or "Mental Assessment"). The Court's analysis focuses on the parties' arguments regarding the Mental Assessment.

The Mental Assessment form completed by Dr. Froelich consisted of a checkbox-style questionnaire. *See* Tr. 662–64. Dr. Froelich indicated that Mr. Pense had major depressive disorder with suicidal ideations and PTSD. *See* Tr. 662. Dr. Froelich then assessed Mr. Pense's ability to do work-related activities on a day-to-day basis in a regular work setting "based on [his] examination[] of how [Mr. Pense's] mental/emotional capabilities are affected by any of the . . . diagnosed impairments." *Id.* (emphasis removed). Dr. Froelich first opined that Mr. Pense was extremely limited[10] in his ability to:

- ignore or avoid distractions while working;
- adapt to changes;
- handle conflicts with others; and
- respond to requests, suggestions, criticism, correction and challenges.

Tr. 663–64. He next opined that Mr. Pense had marked limitations in his ability to:

- sequence multi-step activities;

---

[10] The various degrees of limitation resulting from psychological factors were defined on the Mental Assessment form as:
> None: You are able to function in this area independently, appropriately, effectively and on a sustained basis.
> Mild: Your functioning in this area independently, appropriately, effectively and on a sustained basis is slightly limited.
> Moderate: Your functioning in this area independently, appropriately, effectively and on a sustained basis is fair.
> Marked: Your functioning in this area independently, appropriately, effectively and on a sustained basis is seriously limited.
> Extreme: You are not able to function in this area independently, appropriately, effectively and on a sustained basis. An extreme impairment is very severe, and will not apply to most patients. Please mark Extreme only when well supported by clinical evidence.

*See* Tr. 662 (cleaned up).

- work at an appropriate and consistent pace, or complete tasks in a timely manner;
- work a full day without needing more than the allotted number or length of rest periods during the day;
- manage psychologically based symptoms;
- cooperate with others, or ask for help when needed; and
- keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

Tr. 662–64. Dr. Froelich opined that Mr. Pense was moderately limited in his ability to:

- follow one- or two-step oral instructions to carry out a task;
- recognize a mistake and correct it, or identify and solve problems;
- use reason and judgment to make work-related decisions;
- work close to or with others without interrupting or distracting them; and
- understand and respond to social cues.

*Id.* Dr. Froelich also opined that Mr. Pense was mildly limited in his ability to:

- initiate and perform a task [he] knows how to do;
- sustain an ordinary routine and regular attendance at work;
- distinguish between acceptable and unacceptable work performance; and
- set realistic goals.

*Id.* Finally, Dr. Froelich opined that Mr. Pense had no limitations in his ability to:

- make plans independently of others;
- maintain personal hygiene and attire appropriate to a work setting; and
- be aware of normal hazards and take appropriate precautions.

*See* Tr. 663. The Court notes that Dr. Froelich did not complete any of the narrative portions of the Mental Assessment form, with the exception of the substance abuse section wherein he specified that Mr. Pense did not drink alcohol or use street drugs. *See* Tr. 664.

In her decision, the ALJ summarized Dr. Froelich's treatment records from the pertinent time period. *See* Tr. 25 (summarizing November 2016 and December 2016 office visits); Tr. 26 (noting Dr. Froelich provided post-hospitalization care to Mr. Pense in April 2017). She did not summarize the opinions rendered in the Mental Assessment. Instead, she proceeded directly to determining the weight to be assigned. *See* Tr. 26. She assigned "no weight" to the Mental Assessment, explaining she did so because she found:

> no evidence that he [Dr. Froelich] has any expertise in psychology or mental health treatment that would qualify him to render reliable opinions. The qualifications of the State agency psychological consultants in mental health treatment and their expertise in disability evaluation by virtue of their experience as State agency consultants renders their opinions entitled to greater weight than Dr. Froelich's mental assessments.

*See* Tr. 29 (internal citations omitted). The ALJ's statement represents the extent of her consideration of the Mental Assessment.

### C. Whether the ALJ Erred in her Evaluation of Dr. Froelich's Mental Assessment

As a treating source, Dr. Froelich's opinions expressed in the Mental Assessment were entitled to controlling weight if well-supported and not inconsistent with other substantial evidence. On appeal, Mr. Pense essentially argues that the ALJ failed to demonstrate good cause for assigning less than controlling weight to Dr. Froelich's Mental Assessment. *See* Dkt. 18 at 13–15; Dkt. 20 at 1–2. The Court agrees. As the Fifth Circuit explained in *Newton*, good cause to assign less than controlling weight to a treating physician's opinion exists where the opinion is "conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. Here, the ALJ provided none of these reasons as her basis for discounting Dr. Froelich's opinions. Rather, the only reason the ALJ gave for assigning no weight to the Mental Assessment was that Dr. Froelich did not have expertise in psychology or mental health treatment. *See* Tr. 29. As Mr. Pense points out, a treating source's specialization is not a reason enumerated in *Newton* for establishing good cause. A treating source's lack of specialization alone is insufficient to establish good cause for assigning no weight to the treating source's opinion. *See Johnson v. Astrue*, No. 3:09-cv-492, 2010 WL 3894098, at *6 (M.D. Fla. Sept. 30, 2010) (stating that a treating physician's specialization is "irrelevant to whether good cause exists to discount" his/her opinion, and noting that specialization only becomes a factor to consider when "determining how much weight [the] opinion should be

11

given if it is given anything less than controlling weight"); *see also Yhon v. Colvin*, No. 3:13-cv-1607, 2015 WL 1470884, at *9 (M.D. Fla. Mar. 31, 2015) ("While specialization is a factor that may be considered in evaluating medical opinions, it cannot, in and of itself, amount to good cause for discounting such opinions." (citations omitted)); *see also Jones v. Saul*, No. 2:19-cv-201, 2020 WL 6937724, at *1 n.13 (S.D. Ala. Nov. 23, 2020) (noting that specialization "alone does not constitute good cause to reject a treating physician's opinion" and finding the ALJ's use of specialization as a basis for good cause was harmless error because the ALJ articulated other reasons for rejecting the opinion). The Court therefore finds the ALJ's reasoning was insufficient to establish good cause for assigning the Mental Assessment less than controlling weight.

Moreover, the ALJ did not indicate that the Mental Assessment was controverted by medical evidence from another treating or examining source; in fact, the ALJ also gave no weight to the other examining source opinion in the record, that of psychological consultative examiner, Randall Rattan, Ph.D. *See* Tr. 29. The only other opinions the ALJ considered were from state agency psychological consultants, neither of whom treated or examined Mr. Pense. *See* Tr. 101–13, 129–44. Consequently, because the ALJ did not identify any competing first-hand medical evidence from a treating or examining source, the ALJ was required to conduct a detailed analysis of the § 404.1527(c) factors. *See Newton*, 209 F.3d at 453 ("[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [404.1527(c)(2)]."). It is clear the ALJ failed to do so in this case. Although the ALJ considered Dr. Froelich's specialization, she did not discuss any of the other § 404.1527(c) factors that pertain to treating relationships—i.e., the length of the treatment relationship, the frequency of examination, or the extent of the

treatment relationship. *See* 20 C.F.R. § 404.1527(c)(2)(i)–(ii). Nor did the ALJ discuss the Mental Assessment in terms of the supportability or consistency factors set forth in § 404.1527(c). The Court acknowledges the ALJ stated in a conclusory fashion at the start of her RFC discussion that she considered opinion evidence in accordance with applicable regulations. *See* Tr. 25. But this type of general, formulaic statement was insufficient to meet the ALJ's burden to sufficiently explain her reasons for assigning no weight to the Mental Assessment. *See Schofield v. Saul*, 950 F.3d 315, 321 (5th Cir. 2020) ("Mere citation to the relevant rule, while perhaps helpful to show an agency was aware of its obligations, is not enough to demonstrate the agency *fulfilled* them."); *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) ("cursory, boilerplate language . . . does not constitute an explanation for rejecting a medical opinion"). Thus, in addition to failing to demonstrate good cause for assigning less than controlling weight to the Mental Assessment, the Court finds the ALJ committed legal error by failing to conduct the required analysis of the § 404.1527(c) factors when she weighed the Mental Assessment.

The Commissioner's argument to the contrary is not persuasive. The Commissioner contends the ALJ's consideration of one of the § 404.1527 factors—i.e., Dr. Froelich's specialization—was sufficient to meet the treating physician rule. *See* Dkt. 19 at 6. This argument ignores the Fifth Circuit's explicit holding in *Newton* that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *See Newton*, 209 F.3d at 457. In sum, the ALJ's failure to conduct the treating physician analysis, and in particular, her failure to consider each of the § 404.1527 factors, is prejudicial in this case. Had the ALJ engaged in the requisite analysis, it is conceivable the ALJ might have determined that Dr. Froelich's opinions were entitled to greater weight, which could have led to a different result. *See, e.g.*, *Jackie F. v. Saul*, No. 3:19-cv-1441, 2020 WL 5211064, at

13

\*7 (N.D. Tex. Aug. 31, 2020) (reversing and remanding because "had the ALJ conducted the proper analysis under § 404.1527(c)(2), he might have determined that Dr. Hughes's opinions were entitled to greater weight, which could have led to a different result."). When the Commissioner "has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990). Accordingly, remand is warranted.

### D. Dr. Froelich's Physical Assessment and Dr. Rattan's Consultative Exam

As a final matter, the Court notes Mr. Pense also argued in his briefing that the ALJ erred in her consideration of Dr. Froelich's Physical Assessment, as well as consultative examiner Dr. Rattan's opinion. *See* Dkt. 18 at 12–14. Because the Court is remanding for the ALJ to reconsider Dr. Froelich's Mental Assessment, the Court will not reach these other issues raised by Mr. Pense because they may be impacted by the ALJ's treatment of this case on remand. However, on remand, the ALJ should re-evaluate the Physical Assessment to ensure compliance with the treating physician rule, and re-evaluate Dr. Rattan's opinion under the rules governing analysis of consultative examiner opinions. The ALJ should provide proper reasons if she again chooses to reject Dr. Froelich's and Dr. Rattan's opinions, or else properly factor them into the RFC assessment.

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends: (1) Mr. Pense's SSI claim be **DISMISSED**; and (2) the Commissioner's decision as to Mr. Pense's DIB claim be **REVERSED** and **REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 22nd day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE